IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

Justin P.,[1]

             Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

Case No. 3:18-cv-01770-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Justin P. brings this action pursuant to the Social Security Act ("Act"),

42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of

Social Security ("Commissioner") which denied Plaintiff's application for Disability

Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's

decision is REVERSED and REMANDED for an immediate award of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On February 20, 2014, Plaintiff filed an initial application for DIB with a date last insured of December 31, 2015. Tr. 15. In his application, Plaintiff alleged disability beginning on May 30, 2010, due to failed back syndrome, post-traumatic stress disorder ("PTSD"), major depression and suicidal ideation. Tr. 198. An administrative hearing was held before an Administrative Law Judge ("ALJ"), on July 2, 2015. Plaintiff was represented by counsel, and he and a vocational expert ("VE") offered testimony. After the hearing, the ALJ issued a decision on October 8, 2015, finding Plaintiff not disabled under the Act. Tr. 15. The Appeals Council declined review on May 18, 2016. Tr.1. Plaintiff appealed the decision, and on August 14, 2017, Magistrate Judge John Acosta issued an order and opinion remanding the case for further proceedings. Tr. 2367-2383. A second administrative hearing was held on June 26, 2018, and, on July 31, 2018, the same ALJ again found Plaintiff not disabled under the Act. Tr. 2291. Plaintiff then filed a direct appeal with this Court.

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The court must evaluate the complete record and weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden. The plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of May 30, 2010, through the date last insured. Tr. 2293. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, obesity,

failed back syndrome, anxiety, depression and PTSD. Tr. 2293. 20 C.F.R. §§ 404.1520(c). At step three, the ALJ determined Plaintiff's impairments, whether considered singly or in combination, did not meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 2294. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found that Plaintiff

> had the residual functional capacity to perform modified sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently. He can sit for 6 to 8 hours and stand/walk for 2 of 8 hours. He can push/pull as much as he could lift and carry. The claimant can never climb ladders or scaffolds. He can no more than occasionally crouch, crawl, balance, stoop, kneel and climb ramps and stairs. He is further limited to simple, routine and repetitive tasks and simple work related decisions. He can no more than occasionally interact with the public and with coworkers.

Tr. 2296. At step four, the ALJ determined that Plaintiff does not have past relevant work. Tr. 2306. At step five, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as small products assembler, electronics assembler, and escort vehicle driver. Tr. 2307. Accordingly, the ALJ found that Plaintiff was not disabled and denied his application for benefits. Tr. 2308.

## DISCUSSION

Plaintiff raises four assignments of error on appeal. He contends that the ALJ erred in: (1) his evaluation of the medical opinions from Dr. Mandelblatt and Dr.

Ellison; (2) not providing persuasive, specific and valid reasons for not assigning great weight to the Veteran's Administrative (VA") unemployability determination, (3) not providing clear and convincing reasons to reject Plaintiff's symptom reports and (4) assigning a RFC assessment that was not supported by substantial evidence because the ALJ failed to include all supported functional limitations. The Court addresses each issue in turn.

I. *Medical Opinion Evidence from Dr. Mandelblatt and Dr. Ellison*

Plaintiff argues that the ALJ erred in his evaluation of the medical opinions from Dr. Steven Mandelblatt and Dr. John Ellison, because he did not provide specific and legitimate reasons to reject their opinions. The Court agrees that the ALJ committed harmful legal error in his evaluations of this evidence.

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R, § 404.1527(d). Accordingly, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chafer,* 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate

reasons." *Id.* at 830-831. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

## A.      *Dr. Mandelblatt's Medical Opinion*

The ALJ committed harmful legal error in giving Dr. Mandelblatt's 2015 medical opinion little weight. Dr. Mandelblatt, Plaintiff's treating physician, diagnosed Plaintiff with "failed back surgery, chronic low back pain and depression with fair response to extensive medical and surgical intervention and counseling." Tr. 2165. The prognosis was fair for the short term but poor to nonexistent for recovery. Tr. 2165. Dr. Mandelblatt's opinion indicated significant limitations on Plaintiff's mental and physical abilities to perform at work. Tr. 2165-2168.

The ALJ provided five reasons for giving Dr. Mandelblatt's opinion little weight. Tr. 2303-2304. First, the ALJ noted that state agency physician's Dr. Jensen and Dr. Eder had opined that Plaintiff could "perform light exertional work with occasional postural restrictions." Tr. 2303. In his decision, the ALJ

only addressed Dr. Eder's opinion and gave it "some" weight. Tr. 2305. The ALJ did not explain, however, why Dr. Eder's opinion contradicts Dr. Mandelblatt's medical opinion. The fact that there is contradicting medical opinion cannot be the only reason to reject the opinion of a treating physician. *Lester*, 81 F.3d at 831. Therefore, Dr. Jenson and Dr. Eder's contradictory opinions are not a specific and legitimate reason for discrediting Dr. Mandelblatt's opinion.

The ALJ's second reason given for not fully crediting Dr. Mandelblatt's opinion was that "although markers of inflammation were elevated, as the District Court noted, imaging results of the claimant's spine indicate his fusion hardware was intact and there was evidence of deconditioning, with the claimant encouraged to increase his physical activity in a paced progression." Tr. 2304.

As Magistrate Judge Acosta already pointed out, the fact that the hardware is intact does not contradict Dr. Mandelblatt's opinion and is not a specific and legitimate reason to contradict Dr. Mandelblatt's medical opinion. Tr. 2375.

Evidence of deconditioning and the provider's recommendation of increased physical activity was made in January 2014. Tr. 717. Dr. Mandelblatt's opinion occurred in February 2015. Tr. 2168. As Plaintiff's treating physician, Dr. Mandelblatt had the evidence of deconditioning

available to him, and, additionally, a full year of medical records to determine whether Plaintiff was able to increase his physical activity to counter deconditioning. After reviewing all the data, Dr. Mandelblatt gave his medical opinion as to Plaintiff's limitations. Therefore, the evidence of deconditioning and a recommendation to increase physical activity a year before this opinion is not a specific and legitimate reason to reject this opinion.

The ALJ's third reason for not fully crediting Dr. Mandelblatt's opinion was that Dr. Ellison noted, in his 2015 opinion, that Plaintiff's positive straight leg raise tests were "possibly magnified." Tr. 2304. The ALJ relied on the use of the word "possibly" without pointing out any other evidence in Dr. Ellison's opinion to discredit Dr. Mandelblatt's opinion. As discussed below, the fact that Plaintiff could "possibly" be magnifying his symptoms is not substantial evidence to discredit Dr. Mandelblatt's medical opinion.

The ALJ's fourth reason for not fully crediting Dr. Mandelblatt's opinion was that new medical records "indicate the claimant staying physically active and walking and biking frequently." Tr. 2304. An ALJ's finding that a doctor's opinion is inconsistent with the claimant's own admitted daily activities is a specific and legitimate reason for rejecting the opinion. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ points to several examples in the record where the claimant was physically active. Tr. 2299-2230. However, when examining the record as a

whole, it is clear that Plaintiff's ability to engage in such activities has declined. As Magistrate Judge Acosta pointed out, Plaintiff had shown some improvement but experienced increased pain in 2015. Tr. 2376. The ALJ pointed to new medical records which indicated a return to performing more strenuous activities of daily living. However, an ALJ may not cherry pick evidence to support his conclusion that a plaintiff is not disabled, and the Court is not persuaded by the scant examples cited in the ALJ's decision. See *Holohan*, 246 F.3d at 1207. Plaintiff did engage in pool therapy at the direction of his doctor, but he stopped when it failed to improve his symptoms when out of the pool. Tr. 2327. Moreover, as to the claim that Plaintiff engaged in cycling in 2016, it appears that notation was carried over from an older chart note. Tr. 2328. As to the contention that Plaintiff occasionally walked his pets with his mother, the Court notes that the Act "does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)

Plaintiff also argues that the recent chart notes do not show an accurate picture of his daily life and that the instances of physical activity that occur in the new records caused him pain, so he stopped. The only new medical opinion in the record is that of Dr. Ellison in 2018, discussed below, but the ALJ discredits it because it occurred after the relevant time period. Tr. 2304. The few chart notes cited by the ALJ, are not inconsistent with Dr. Mandelblatt's

medical opinion, and, thus, the notes do not amount to substantial evidence to support the ALJ's decision.

The last reason given for not fully crediting Dr. Mandelblatt's opinion is: "the most recent treatment notes, although slightly after the relevant period suggest possible significant drug diversion, with the claimant unclear why he was taking pain medication and denying any pain problems." Tr. 2304. The ALJ specifically pointed to chart notes which he felt indicated that Plaintiff no longer needed medication. Tr. 2304. First, a nurse wrote that Plaintiff denied any pain problems and did not know why he took the pain medication. Tr. 2546. Plaintiff disagreed with this statement and discussed it with his physician. Tr. 2546. Second, a chart note in 2017, indicated that the doctor wondered why Plaintiff's urine sample was negative for oxycodone. Tr. 2555. Plaintiff responded that he does not take medication before he is driving. Tr. 2544. More importantly, there is nothing in the record that indicates that he is giving his medication to anyone else. A few chart notes, when examined with the entire record, possibly indicating drug diversion does not support the ALJ's decision to discredit Dr. Mandelblatt's comprehensive medical opinion.

Thus, the ALJ again committed harmful legal error in his evaluation of Dr. Mandelblatt's 2015 medical opinion.

B.    *Dr. Ellison's Medical Opinion*

Plaintiff next argues that the ALJ committed harmful legal error in

rejecting Dr. Ellison's 2018 medical opinion.

Dr. Ellison diagnosed Plaintiff with "persistent chronic low back pain with history of two failed surgeries...limited range of motion and straight leg raise with either leg," chronic depression and PTSD helped by treatment, obesity, untreated hypertension, and chronic tinnitus. Tr. 2643. Dr. Ellison noted various physical limitations that limited Plaintiff to less than an 8-hour workday, because Plaintiff needed to recline. Tr. 2644-2649. Dr. Ellison also noted that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. Tr. 2649.

The ALJ concluded that Dr. Ellison's opinion should be given little weight because (1) it was not within the relevant time period, (2) did not "comport with evidence of deconditioning, examination results showing the claimant had normal strength and gait, with a mostly unremarkable sensory examination except forth claimant's right foot, (3) evidence of possible symptom magnification, (4) new treatment records indicating the claimant staying physically active and walking and biking frequently (5) as well as evidence of possible drug diversion." Tr. 2304.

Dr. Ellison's 2018 opinion did not occur during the relevant time period. However, the ALJ himself ordered this consultative evaluation after Judge Acosta remanded the case previously, and such medical opinions made after the relevant time period are relevant. *Lester*, 81 F.3d at 832. Therefore, the

fact that Dr. Ellison's opinion was made outside of the relevant period of time is not a specific and legitimate reason to discredit his opinion.

The ALJ determined that evidence of deconditioning somehow does not comport with Dr. Ellison's opinion. Tr. 2304. However, Dr. Ellison's report is consistent with the fact that Plaintiff has significant limitations, which has caused him to become less active.

The ALJ uses Dr. Ellison's 2015 medical opinion, which included a note that Plaintiff's testing results were "possibly magnified," as a reason to give less weight to his 2018 medical opinion. Tr. 2304. In 2018, Dr. Ellison examined Plaintiff's medical record, which included his own 2015 medical opinion, and still noted significant limitations. Additionally, in 2018, there is no mention of "possibly" magnified symptoms. Therefore, a minor difference in two opinions is not a specific and legitimate reason to discount the 2018 opinion.

The ALJ also notes evidence of new medical records and possible drug diversion. However, as discussed above, these are not specific and legitimate reasons to discount this medical opinion evidence. Therefore, the ALJ committed harmful legal error in his evaluation of Dr. Ellison's 2018 medical opinion.

## II.    *VA Unemployability Determination*

Plaintiff next contends that the ALJ committed harmful legal error when evaluating the VA disability rating decision that he was unemployable. VA determinations are to be given great weight by the ALJ, and if he does not, he must

give persuasive, specific, and valid reasons to reject the determination. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). A letter by the VA, dated March 6, 2013, stated that Plaintiff has an 80% service-connected disability, but paid at 100% because he was deemed unemployable. Tr. 167. The VA gave him a 70% disabled rating for PTSD and a 40% rating for ankylosis spondylitis. Tr. 721. Under the question, "Are you considered to be totally and permanently disabled due to your service-connected disabilities," the VA wrote "yes." Tr. 167.

The ALJ did not accept the VA's disability determination and recited the same five reasons he gave for rejecting Mr. Mandelblatt's opinion. Tr. 2305. For the same reasons as stated above, a simple contradiction by non-examining physicians is not a persuasive, specific, and valid reason to reject the VA determination. Additionally, the Court finds that Dr. Mandelblatt and Dr. Ellison's opinions are consistent with each other and support the VA's ultimate determination of unemployability.

Again, for the same reasons as stated above, intact hardware and evidence of deconditioning, consultative examination results, new treatment records, and possible significant drug diversion are not a persuasive, specific, and valid reasons to reject the VA's determination of unemployability. Therefore, the ALJ committed harmful legal error when rejecting the VA determination of unemployability.

III. *Plaintiff's Subjective Symptom Reports*

Next, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to support his rejection of Plaintiff's subjective reports concerning the intensity, persistence and limiting effects of his symptoms. When a claimant's

medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of his symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony ... that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039.

Plaintiff claims that his symptoms relating to his failed back syndrome, PTSD, major depression and suicidal ideation keep him from being able to work. Tr. 198. The ALJ found "that the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 2297.

The ALJ listed three reasons why Plaintiff's symptom reports are not credible: intact hardware with no recommendation for additional surgery and relief with medication and other treatment; notations in medical records of high physical activity; and probable opioid dependence and deconditioning.

Turning to the first reason, the ALJ states that "[a]lthough diagnosed with degenerative disc disease, failed back syndrome and obesity, imaging reports of the claimant's back after the surgery showed intact hardware with no evidence of complications. No additional surgery was recommended…the claimant had some relief with medication and other treatment." Tr. 2297. The ALJ does not, however, point out why intact hardware would not cause pain. The fact that Plaintiff's hardware is intact is not inconsistent with his testimony that he is still in pain or the medical opinion evidence offered by Dr. Mendelblatt and Dr. Ellison. There was no recommendation for additional surgery because his doctor believed there was no benefit, and instead, recommended injections to alleviate his pain. Tr. 2220. Also, the fact that Plaintiff experienced "some" relief with medication and treatment does not mean that he was pain free. Therefore, the fact that he had intact hardware, a recommendation to not have an additional surgery, and some relief with medication

and other treatment is not a specific, clear and convincing reason to discredit Plaintiff's symptom testimony.

Next, the ALJ points out that "there are notations in the medical record of high activity levels, including walking and biking, inconsistent with the claimant's allegedly debilitating symptoms." Tr. 2297. First, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F.3d at 1205).

As noted above, the record shows that Plaintiff's symptoms were improved for a period of time, but, in April 2014, Plaintiff complained of increased pain and only experienced some benefit with breakthrough pain medication. Tr. 1378. Plaintiff also told his doctor that he was having leg pain and spasms in his lower back that caused him to kick his legs and crawl up in a ball of pain. Tr. 1378. Plaintiff stated that this pain reminded him of the pain he felt before his last fusion. Tr. 1378. During this period, Plaintiff also saw Dr. Anderson Goranson, who stated that Plaintiff was "experiencing a worsening of pain" which exacerbated his psychiatric condition. Tr. 1380. Additionally, Dr. Ellison's 2018 medical opinion states that he still had significant limitations. Tr. 2644. Plaintiff argues that the references in the medical record cited by the ALJ are only instances where he felt better for a short period of time but overall, he still suffers from chronic low back pain and severe depression that keeps him from working. The Court agrees.

Second, courts have been clear that a plaintiff is not required to "vegetate in a dark room in order to be eligible for benefits." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Examining each of the instances of "high" activity that the ALJ points out, the Court notes that they only show an activity that Plaintiff either did for a brief part of the day, a few times a week, or he that he planned to do in the future. For example: "He reported going out with friends at least once a week and engaging in other social activities throughout the week." Tr. 2301. "He also reported cooking and giftwrapping for the holidays." Tr. 2301. He "reported joining a local swimming center for six months." Tr. 2302. "He further reported having Facebook friends in Kansas and playing online games." Tr. 2302. In order to receive disability payments, a person need not completely withdraw from life and show that they are incapable of doing anything. The record shows an individual who is trying to be active and social but struggles due to his chronic back pain and PTSD, which is consistent with the medical evidence. Therefore, a few notations in the medical record of activity are not specific, clear and convincing reasons to reject Plaintiff's symptom reports.

Finally, the ALJ states that "[l]ater records also note the claimant's probable opioid dependence and deconditioning, both of which rather than the claimant's underling impairments likely affected his functionality." Tr. 2297. Notably, this claim contradicts the ALJ's previous reasoning that Plaintiff has a "high" activity level. Tr. 2297. Additionally, the ALJ states that Plaintiff is opioid dependent, but also states that there is possibly drug diversion. Tr. 2297 and 2304. Therefore, the

Court finds that probable opioid dependence and deconditioning is not a specific, clear and convincing reason.

In sum, the ALJ erred in not providing clear and convincing reasons to discredit Plaintiff's symptom reports.

## IV.    *RFC Assessment*

The RFC assessment was not supported by substantial evidence because the ALJ failed to include all supported functional limitations. The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The ALJ erred in evaluating Dr. Mandelblatt's medical opinion, Dr. Ellison's medical opinion, the VA unemployability rating, and Plaintiff's symptom reports. The RFC was not supported by substantial evidence because these limitations were not included; therefore, the ALJ erred in assessing Plaintiff's RFC.

/ / /

## V.  *Scope of Remand*

The Court has found the ALJ has again committed harmful legal error.  The Court has discretion under 42 U.S.C. § 405(g) to decide "whether to remand for further proceedings or for an award of benefits."  *Holohan,* 246 F.3d at 1210 (citation omitted).  The issue turns on the utility of further proceedings.  *Id.*  A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.  *Strauss v. Comm'r of the Soc. Sec.,* 635 F.3d 1135, 1138 (9th Cir. 2011).

The credit-as-true doctrine is settled in the Ninth Circuit and binding on this Court.  *Garrison,* 759 F.3d at 999.  Under this doctrine, courts must utilize the following sequential evaluation process: (1) determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence, be it claimant testimony or medical opinions; (2) review the whole record to assess whether it is fully developed, free from conflicts and ambiguities, and that all essential factual issues have been resolved; and (3) determine whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true.  *Dominguez v. Colvin,* 808 F.3d 403, 407-08 (9th Cir. 2015) (internal quotation marks and citation omitted).  Additionally, even if all three of the foregoing primary elements are met, courts can still remand for further proceedings if the record as a whole "creates serious doubt" about whether a claimant is disabled as a matter of law.  *Id.*

Here, the first prong of the credit-as-true analysis is satisfied. The ALJ committed harmful legal error when he did not provide specific and legitimate reasons to give little weight to Dr. Mandelblatt and Dr. Ellison's medical opinions; when he did not provide persuasive, specific, and valid reasons to reject the VA determination of unemployability; and when he did not provide specific, clear and convincing reasons to reject Plaintiff's symptom reports.

With respect to prong two, the Court finds that the record as a whole is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved. There have already been two administrative hearings and decisions. The Court finds no inconsistencies in the record that cast doubt on Plaintiff's claim of disability. Remanding for further proceedings would only serve to perpetuate an impermissible "heads we win; tails lets play again" system of disability benefits. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

With respect to prong three, the Court finds that on remand the ALJ would be required to find Plaintiff disabled if Dr. Mandelblatt's medical opinion is credited as true. A VE was asked at the first administrative hearing whether Plaintiff could sustain competitive employment with the limitations documented by Dr. Mandelblatt, and the VE testified that with those restrictions he could not do so. Tr. 73. Additionally, crediting Dr. Ellison's opinion, the VA unemployability determination, and Plaintiff's symptom reports, all of which support Dr. Mendelblatt's limitations, there is no doubt that the ALJ would be required to find Plaintiff disabled on remand.

The record is fully developed, and further administrative proceedings would serve no useful purpose. Crediting the evidence noted above as true, the ALJ would be required to find that Plaintiff is disabled. Therefore, the Court reverses the Commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and the case is REMANDED for an immediate award of benefits.

IT IS SO ORDERED.

Dated this 21st day of October, 2019.

Ann Aiken
United States District Judge